Court calls Story v. Illinois Central Railroad 5-10-505. Mr. Reitz, you may proceed. Thank you, Your Honor. Your Honor, Mr. Johnson, may I please report my name is Kurt Reitz and I represent Illinois Central Railroad Company. Before I start, I have one correction I need to make to our briefs. In footnote 1 of both the brief and the reply, it's asserted that Dr. Garnett was involved in the Suggestion Plans Council. And there's no support for record for that, so that should be ignored and I apologize. With that said, this appeal arises out of the trial court's denial of a motion to transfer this action from St. Clair County to Williamson County based upon the document of form and occupations. The plaintiff is a long-time track repairman and machine operator for Illinois Central and he filed a complaint in St. Clair County alleging competitive accumulative trauma over the course of his employment. And he's claiming injuries in count one to his back and injuries to his upper extremities in count two. We filed a formal, I think we filed a formal because the plaintiff is a lifelong resident of Williamson County and neighboring Franklin County. His family lives there and the vast majority of the fact and medical witnesses, 16 of the 18 that we identified, that Illinois Central identified, reside in or near to Williamson County and St. Clair County. Not one witness in this case has been identified who resides in St. Clair County. The plaintiff has never lived in St. Clair County and unfortunately the trial court refused to transfer this case despite those facts. And we believe that very simply put, the location of the witnesses and the evidence in this case when you consider the public and private factors, which we are all bound to do, overwhelmingly favor transfer to Williamson County because it has a predominant connection in this case. Let me ask a question. I haven't seen the record and it's not in the appendix, but does the complaint allege that these injuries in part occurred in St. Clair County? I believe it makes a broad general statement that that is the case, Your Honor. And because the allegation is repetitive accumulative trauma and my understanding is at least for parts of 13 of his 38 years he worked in St. Clair County. That is true, although, and that's part of the reason why we're here, in that it was argued at the trial court that he actually worked 13 years or a third of his career in St. Clair County. This case is not one without an extensive record. We took the plaintiff's deposition and it turned out, several things turned out when we took his deposition, which is why we have cross-examination. It turned out that the plaintiff had no memory of working in St. Clair County at all since 2002, the last six years of his employment. And it turned out, when asked specifically when he did work in St. Clair County, how much he worked in St. Clair County, he said that he didn't know. So now we're left with a record that the only connection, arguable connection, to St. Clair County is that for some unspecified period of time, during 13 years he can't identify, but we know it's before 2002, he on occasion worked in St. Clair County. And those are obviously met with the McGinty and Laverty cases, that specific, and it goes all the way back to Glam versus Norfolk and Western in 1985, one of the first cases I worked on, that say, occasional work in a county, Glam was Madison County, McGinty was Madison County, Laverty was Madison County, occasional work in a county is not enough to have a case form here. And what's more, it is not some silver bullet, it is not the only factor to consider, it is blended in with all the other factors, and in this case, as we go through this, I think the record is clear, and it's an extensive record, that the overwhelming consideration of factors from witnesses, to where the plaintiff lives, to where the evidence sources are, that all those factors outweigh any small connection that might be incurred by occasionally working in St. Clair County for some unspecified period of time. The two attorneys are from Belleville? Sure, Your Honor, they fought suit in Belleville. Is that who you are, and the other attorney from Belleville? Actually, I live in Norfolk, Illinois, in Monroe County, and I practice all over down here, as most defense lawyers do, but the fact that they sued in Belleville, and they hired a Belleville firm is no great surprise, and the courts have obviously said on occasion, occasion, occasion, that that's not a consideration. If they filed this in Chicago, I'm sure they would have filed it with a Chicago firm, to try and move this case down where it belongs. So that's where we're at in this case, of the 18 witnesses identified by Illinois Central, not one from St. Clair County, not one, nine are from Williamson County, and 16 of these 18 witnesses live in or near Williamson County. And then when you add what Plano did in opposition to this, to that, they filed affidavits from five Oklahoma boys, three of which happened to be new witnesses, two of which were recovered in our disclosure. Of those three, two of the three are actually closer to Williamson County. So now we have a grand total of 18 out of 21 witnesses that either live in or near Williamson County. Those are the facts. Plano signed an affidavit that he worked for some part 13 years out of his 38 years in St. Clair County, and when his deposition was taken, and I won't belabor it, he simply stated that he didn't know. Is that something Illinois Central would have records of? Wouldn't Illinois Central be able to say really how often he did work there? They work out of gangs, and they work out of locations. This particular gentleman, I believe, worked out of Harbordale for a good portion of his career, and then also worked out of what's called the Blueford Cell for a good portion of his career. Beyond that, unless the gentleman keeps time, which sometimes they do, it's hard for us to figure out exactly where they've been. Okay, so the answer would be they would not necessarily. In this particular case, the answer is no. In certain cases, in certain transportation crafts, the records are there. Your Honors, we believe the trial courts are here. It's just irreconcilable with the Plano decision from the Illinois Supreme Court, the Daugherty decision from the Illinois Supreme Court, and with your folks' own decisions in McGinty and in Larry. And when you go to consideration of public and private factors in this, we think it becomes even more clear. First, you go to what deference the plaintiff is entitled to in this case. And although the plaintiff's choice of form is normally granted some deference, our Supreme Court has addressed this in Daugherty and said that where plaintiff chooses a form that is neither his residence nor the site of his injury, it is much less reasonable to assume that the form is convenient. In fact, it's reasonable to conclude that form shopping is occurring. It's that site of injury that's bothersome. And that's what? Okay, because we do have a record where he says for some parts of 13 of his 38 years he worked in St. Clair County, he's alleging repetitive human relief trauma. And on, you know, take McGinty, whatever. On a sliding scale, where is the line drawn where he doesn't get the benefit of? Well, that's the issue. When I came down here and argued McGinty, I got the exact same question from the court in that particular case, and the answer was, and it's exactly what is put in the majority opinion in McGinty, and that is the idea that a trucking company, use the example that we made in Unreason that they followed McGinty, that a trucker could drive across the state and somehow have a claim in any county he wanted through every county he drove in across this state is facetious. But that's not what we have here, though, is it? In a way it is, Your Honor. We have made some way of going and he maintains track, and he maintains track out of Carbondale, Illinois, but in various parts of southern Illinois. And as he, not since 2002 has he been in St. Clair County, but at some part, at some time, he doesn't know how much he worked in St. Clair County. We're not, we can't debate that. We can't prove the negative. But as McGinty says, two things. Number one, that is a small factor to consider, one factor, not a silver bullet. And it's not a silver bullet, and that was the sole argument in McGinty and this court found that it's not a silver bullet, that even if you find that that is one factor to consider, it's one factor to consider among many. And I would suggest that the court can resolve this very easily by using their common sense. We have a Williamson County plaintiff. We have a Williamson County plaintiff with his wife, daughter, the whole family lives in Williamson County, half, for almost their entire lives. We have 18 out of 21 witnesses who are in or near Williamson County. It's nice that he may have worked up here in St. Clair County for any period of, some small period of time, which he can't say, but that is not a silver bullet. And that's the second factor is if you use our common sense. However, okay, you started your argument talking about site of injury because the first thing we have to do is determine how much deference the plaintiff's choice of forum is allowed. Yes, sir. So site of injury is not one of the public or private interest factors. That goes to how much deference the plaintiff's choice is allowed. That's not what McGinty says, though. This is McGinty again, or McGinty. Mr. McGinty lived in Liberty, Missouri, St. Louis, Missouri, and worked for over a year in Madison County, according to the dissent, Judge Donovan's dissent. He points out in great pain that in McGinty, the record shows he was assigned to the Luther Yard in St. Louis, Missouri, for more than a year. And while there, spent a significant amount of time patrolling and surveilling the railroad's properties and assets in Illinois, and in particular in Madison County. So here we are in McGinty. McGinty gets right back to the very issue you're asking, Judge Stewart, and that is, with a repetitive injury, how much deference do you give? And McGinty says, you give very little deference. Again, you as a candidate. Under those facts. Under those facts. Which are, here we are again. It's that scale I'm talking about. I mean, you've got 13, parts of 13 years. Beginning, you've got a year out of his career. Those sound different. Well, I don't think so. I think if anything, McGinty's stronger, because at least they had the ability to come up with a year, or more than a year, that this man worked. You're faced with a record here where I don't know how you could ever find this man's work in St. Clair County to be significant. Because while he filed an affidavit that said he stopped working in 06, he actually stopped working in 08. While he filed an affidavit that said, oh, I work, and I don't want to quote it, I can't quote it because I don't have it in front of me right now. But it says he worked significantly, let me suggest, in St. Clair County for 13 years. When it came to a deposition, and swearing under oath, what occurred, he hadn't worked in Madison County since 2000, hadn't worked in St. Clair County since 2002. And he couldn't say how much, specifically, he worked in any given year. So, the record in McGinty for at least a year is much more, carries much more weight than, I don't know how much I worked. I can't tell you the years, but it was 13 out of my 38 years, but at least it wasn't since 2002. And I would suggest at some point, when the plant lives in Madison, lives in Williamson County, when the family lives in Williamson County, when 18 out of the 21 witnesses live in Williamson County or closer, when nine of the witnesses actually do live in Williamson County, when there is not one single witness from St. Clair County, when there's no meaningful connection at all to St. Clair County, when the plaintiff has testified in his deposition that he had no accident, no injury, and no pain in St. Clair County, that he hasn't been there since 2002, that that is one very small factor to consider against the great weight of things I just abhorred you all with. Listing on and on and on, but unfortunately, when we get down to common sense, that is what mandates it. And that, just like McGinty, the fact that he put his big toe for 13 months or sometime over a year, McGinty, in Madison County, is no different than working some unspecified portion of his career in St. Clair County in this case. And this is not anything new, and McGinty is not some aberrant. This court, Judge Wexton and Judge Walsh, in Laverty, just last year in October of 2010, said, merely occasionally working in a given county does not vest the citizens with more than a modest interest in the controversy's outcome. That's this court on this very issue. And since this court's published McGinty, we are in a situation where at least some trial judges have refused to follow McGinty or refused to follow Laverty. And frankly, this court has the opportunity to reiterate what the law is on this. The plaintiff in this case, aside from that issue, has made two other arguments which have been flatly rejected by the court, which I would suggest, Mr. Johnson, as an excellent lawyer, gives you an idea of what a tenuous basis this is. First, the plaintiff argued that Illinois Central owned real estate and attached records with regard to real estate ownership in opposition. It's not a fact that we consider this argument was flatly rejected in Daugherty versus Union Pacific. Next, the plaintiff argued that because five of the witnesses co-employees signed affidavits that they would travel to St. Clair County to attend trial. That somehow shifted the burden or shifted in his favor. However, this is another tactic. This has been going on for 27 years, since Blaine versus Norfolk and Western. And this is another tactic that lawyers used to use, especially when a form of convenience first started. They would go get affidavits from a bunch of people in Williamson County, and they'd be happy to come up to St. Clair County and work with their buddy to try their suit. That doesn't work either. The Supreme Court flatly rejected it, not once but twice. So they don't say that that shouldn't be considered at all, do they? I mean, they say there are other factors involved, just the mere fact that the witness says, I'll go. It doesn't mean anything. It doesn't mean anything, even though we're talking about whether it's a convenient forum for everybody, including the witnesses. And you use your common sense that a bunch of people from Franklin and Williamson County that live there, it's a more convenient forum to be here, despite the fact that an attorney may get an affidavit from them that says the contrary. We're supposed to decide it is an inconvenient forum, even though they sign an affidavit saying it's okay with me, it won't be any inconvenience at all, I'll be glad to drive up there. And that's exactly what the Illinois Supreme Court said. And that's common sense, you think? Yes, it is, Your Honor, because what the Supreme Court is wincing at in this is a manufactured forum. That's what the Supreme Court is wincing at. We have 18 of 21 people in or closer to Williamson County, and they go get affidavits. There's a case on the books that Paul Craig had where they actually moved a plaintiff into a trailer in Madison County after the accident. And the Supreme Court is wincing at manufacturing evidence, manufacturing factors for this court to consider. And that's all it is. I mean, that's what it is. The plaintiff's final point is to cite this Hostick case, Hostick v. Union Pacific, where a form of nonconvenience motion, denial of a form of nonconvenience motion was affirmed here. And in that case, the court went to great lengths to point out there had been no significant discovery on the form issue. There was little information by which the court could assess the relative convenience of the parties. That's the case that he makes one of the focuses of his brief, and simply put, that's not this case. That case stands for the proposition, I would suggest, that the plaintiff should win not because he's right, but because the defendant didn't do his homework. All right, that's not this case. In this case, there have been three affidavits setting out the witnesses directly on point. There was a motion to compel the plaintiff to give his deposition, which was granted, and the plaintiff ultimately testified under oath. There's an extensive record in this case. And in Hoskins, the court noted that the defendant did not identify any witnesses in Randolph County where they were trying to transfer the case, not one, and that two of the three witnesses who were identified were actually closer to St. Clair. Here, we are 18 of 21 witnesses in or closer to Williamson County. There's no getting away from it. And nine of them live in Williamson County. So that's the doughnut. Finally, I would suggest that when you look at this record, Your Honors, you're going to be unable to find anything showing a connection exists between this form and this litigation, other than a ball of a specified claim that this man on occasion worked here parts of 13 years and don't know how long. There's no documentary evidence. There's no physical evidence. There's no witnesses connecting this case to St. Clair County. And if this case is not transferred to Williamson County, we end up with a situation, railroads, trucking companies, construction companies, with anybody else who works throughout southern Illinois, where they can be sued in St. Clair County simply because the employee worked there for some small part of his career. Let me ask a question. Maybe I had this wrong. I was under the impression that some of these affidavits that co-employees signed in there, they said, we worked with him in St. Clair County. Is that wrong? Some of them. Some of them do. So when you say there's no documentation, no witnesses, so there are witnesses who say they worked with him in St. Clair County, which would confirm that, in fact, he worked in St. Clair County sometime. As to the work, I would agree with you. We're still looking. That's what I was talking about. When and how much. It's interesting that all those witnesses that you're pointing out, Robert, are all from down in Williamson County or thereabouts. And they worked in St. Clair County sometime too, then. On occasion, on occasion, which has been rejected in McGinty, which has been rejected, actually, was rejected all the way back to Bland v. Norfolk and Western. In Bland v. Norfolk and Western, the case was shifted to Macon County by the Illinois Supreme Court in 1985. And in that case, the Illinois Supreme Court says occasionally working in a given county is not a significant factor to be considered. This is not anything new under the sun. And I would suggest that if the court is going to find that as a factor, it is certainly not a significant factor, and it is only one factor among the many that need to be considered. And when you start piling up the many, many, many others, they're all in favor of transfer. Your Honors, I would suggest that we have, I would recognize that we have the burden in this case, but we have proved this many times over. We have a situation where witnesses have been identified, 18 of 21 are in or closer to Williamson County. Six of the seven medical doctors are in or closer to Williamson County. None, not one single witness. Ask Mr. Johnson when he comes out, who's the witness in St. Clair County? There's not a single one. Your Honors, I respectfully ask that the court transfer this case to Williamson County. If there are no other questions. Thank you, Mr. Reitz. And you'll have an opportunity for rebuttal here in a few minutes. All right, Mr. Johnson. Good morning. May it please the Court and Mr. Reitz. Mr. Reitz did state in his closing remarks there the obvious, and that is he does have, the Illinois Central has the burden of proof in this motion. And one case that Mr. Reitz did not mention is the Langhorst case. And, of course, that's the last Supreme Court pronouncement on the four non-convenience issues that present the Court to Your Honors today. And what the Supreme Court said in its most recent pronouncement is only in exceptional circumstances should, when the interests of justice require a trial in a more convenient forum, should Justice Young's decision to deny Mr. Reitz's motion be granted. And such is not the case here. The Illinois Central is a Class I railroad, one of about nine or ten Class I railroads in North America. And Your Honor, I ask Mr. Reitz a question. In light of the five co-worker affidavits, in light of Mr. Story's testimony, the plaintiff himself, that he worked a substantial percentage of his career in St. Clair County, and therefore a substantial percentage of his repetitive cumulative trauma injuries occurred within the confines of St. Clair County, the question must be asked, why Illinois Central? Why did you not come up with any records, any electronic data, any documents to state, well, Mr. Story's affidavit, Mr. Story's deposition testimony, Alan Albers, Ed Quayhammer, Tom Pritchett, Terry Tripp, and Terry Story's under oath affirmations, stating that they worked also with Tim Story in St. Clair County, where are the records to say that's not true? Where are the records to support Illinois Central's contentions in this case? In the absence of such records, in the absence of such electronic data, I believe right here, right now, Illinois Central has failed in its strong burden of showing this court that the factors, all things taken into consideration, strongly favor a transfer to the forum suggested, in this case, Williamson County. There is still, despite the fact that this is a repetitive trauma, cumulative trauma case, and not a traumatic incident, there is still a significant deference to be paid to Mr. Story's choice of forum here, and that is St. Clair County. Keep in mind that Illinois Central does have a substantial presence in St. Clair County. The very same work factors, the very same work sites, where Mr. Story performed his electric machinery operation throughout his 38 years, the same work areas exist in St. Clair County. There's a substantial business presence in St. Clair County. There's substantial landownings, over 200 parcels in St. Clair County. How then can it be said when the benchmark for non-convenience is convenience of the parties? How then can Illinois Central come into this court with all those factors just listed to your honors and say it's inconvenient to litigate there? Mr. Wright's kept on emphasizing the list of witnesses, and yet the Langenhorst case tells us that the defense cannot argue that the plaintiff's case is somehow inconvenient to be tried in his chosen forum. Mr. Wright's cannot, according to the Langenhorst case, and I will quote from that Langenhorst case to make the point clear, defendants argued that the trial in Clinton County would be more convenient to the plaintiff. However, defendants cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff. Mr. Wright's asserted that my client, his wife, his daughter, are somehow inconvenienced by litigating in St. Clair County. Langenhorst tells him he can't do that. And I can represent to your honors that indeed, Mr. Story, Mrs. Story, and the daughter will testify if this case is allowed to be tried in St. Clair County with no problems for each of them. We've also provided Judge Young and the St. Clair County Trial Court with five uncontradicted affidavits of coworkers with knowledge who worked with this gentleman for years, who worked in St. Clair County for years, during times when Mr. Story and these fellow workers were all assigned to territories on their maintenance of weight duties, which included St. Clair County on a daily basis. Now, they were honest, and Mr. Story was honest in his deposition. They don't go to St. Clair County every day to perform their machine operations, but from time to time they would be assigned to projects within the confines of St. Clair County. And in this repetitive traumatic case, cumulative traumatic case, we have alleged in good faith, and these allegations must be taken, and were taken by Judge Young as true allegations, that a substantial portion, therefore, of his cumulative traumatic injuries occurred within the confines of St. Clair County. Therefore, Plaintiff Tim Story is to be given significant deference in his choice of forum, and we believe that Judge Young's decision was correct. It is noteworthy here that not even the IC in its briefing suggests that it's inconvenient for the plaintiff, or it's convenient for the plaintiff and Illinois Central to litigate in Williamson County. They don't even argue that in their briefing. From the Langenhorst case, and I'm going to point out quotes from the Langenhorst pronouncement by the Illinois Supreme Court that are pertinent to this discussion here this morning. No affidavits have been filed stated that St. Clair County would be an inconvenient forum for the Illinois Central. You didn't see anything in their briefing or any affidavits to that effect. You have not heard anything by way of an Illinois Central argument that the accessing sources of proof, documents, witnesses in this case, would somehow be less convenient in St. Clair County than it would be in Williamson County, and we have to ask ourselves why, and the reason is, of course, is that it's not. Mr. Reitz's firm, Thompson Coburn, which does great work in the railroad niche of the law, is .4 miles from the St. Clair County courthouse. If I call a witness pursuant to Rule 237B of the Illinois Supreme Court rules, the witness will fly down from IC's home offices or regional offices in Homewood, Illinois or Mississippi and fly to Lambert Field in St. Louis, be picked up by a Thompson Coburn paralegal, and be chauffeured over to Mr. Reitz's office in downtown Belleville, Illinois, .4 miles from the courthouse. All the electronic data, all the IC data is located on computers in Mr. Reitz's office. The sources of proof are right there. They could be flown into the Williamson County Airport in Marion as well. Do you agree with that? Yes, they could, and I think that's the point in my divorce. I mean, really, all these arguments about, you know, the truth is we all know evidence depositions are going to be taken from doctors. You know, wherever the court is, corporate officers are going to be flown into the nearest airport. And that's the thing, you know, with the video deposition technology, I think the best thing that came out of the Langenhorst case is a quotation from the Garing case from Justice Lewis. We live in a smaller world. Today, we are connected by interstate highways, Interstate 64 for those witnesses, bustling airways, telecommunications, and the World Wide Web. Today, convenience, the touchstone of the four non-convenience doctrine, has a different meaning. And I think what I'm trying to stress now, maybe not articulately, but in my briefing as well, is that it is a new world, it is a different world. And to argue that the private factors favor strongly in favor of a transfer to Williamson County just don't exist. Analysis of the public factors that do not militate strongly in favor of a transfer to Williamson County at all. Any further questions, Your Honor? Thank you, Mr. Johnson. Thank you. All right, everybody. Mr. Wright. We are brief, but we can see Mr. Storyworth at St. Clair County. How much? When he was given an opportunity under oath to testify, how much? He doesn't know. When? He was given an opportunity to testify under oath. Other than he hasn't been there since 2002, he doesn't know. The answer is, we still don't know. That's the only factor, if it is a factor, that is in the plaintiff's favor in this case. As to the complaint, I looked at the complaint while Paul was arguing, and the complaint makes no allegation that he worked in St. Clair County. There's no reference to St. Clair County at all that I can see. I just read it in five minutes, and I'm mistaken, I apologize. But I don't believe there's any reference at all to working in St. Clair County in the complaint. As to the affidavit, the affidavits very clearly say it would be inconvenient for Illinois Central. Brenda Britt, who's the risk mitigation officer for Illinois Central, says, It would be inconvenient for Illinois Central to replace any employee witnesses who may be required to travel to Belleville for trial in this matter. It would also be inconvenient for Illinois Central to transport these witnesses to Belleville for trial, pay their wages and expenses for the duration of the time spent in trial. We've done our homework. That must be the appendix from the petition for leave to appeal. Is that what that is? A short record, a supporting record? Yes, sir, a supporting record. Somehow we didn't get that, now that we're actually in the appeal. Sorry. Well, it's here. The point of all this is just, as Louis said years ago, he was worried that this would become a battle over minutia. And every time I've been down here on these, these forum motions really are not a battle over minutia. They're a battle over common sense, over manufactured evidence. And coming in here and suggesting that because we own real estate, or because he's able to get five affidavits from co-employees, that it's not really inconvenient, and they'd be happy to come up there, and that plaintiff had some unspecified time for some unspecified amount of time worked here, somehow enables him to make St. Clair County some kind of filing paradise for Southern Illinois, balanced against the common sense reality of plaintiff, wife, family in Williamson County, 18 of 21 witnesses in Williamson County, the medical doctors, six out of seven are all from Williamson County. Let's use our common sense. Just, we have to look at it in context of our standard of review and what your burden was in the trial court. Do you agree with that? Your burden in the trial court was to prove that the factors strongly favor transfer. Our standard of review is abuse of discretion, which is defined as no reasonable person would have adopted the view of the trial court. Understood. So what we have to decide is that no reasonable person would have adopted the view of the trial court that you failed to prove that the factors strongly favor transfer. Do you agree with that? Yes, sir. And that's exactly what we proved in McGinty. That's exactly what we proved in Dottie. That's exactly what we proved in case after case where I've come through here. And that abuse of discretion standard when there's 18 of 21 witnesses and a plaintiff, a lifelong resident of Franklin and Williamson County, I would suggest it's a no-brainer. All right. Thank you both for your excellent briefs and your excellent arguments. I enjoyed having you here. We'll take this matter under advisement.